**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2242-WJM

REX E. WILLITTS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security,

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Rex E. Willitts ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability and social security benefits. The denial was affirmed by an administrative law judge ("ALJ") who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I. BACKGROUND

Plaintiff filed an application for disability benefits alleging an onset date of August 24, 2008. (Admin. Record ("R.") at 52). After conducting an administrative hearing on March 10, 2011, the ALJ issued an unfavorable decision on April 6, 2011, finding Plaintiff "not disabled." (R. 52-66, 67-91). The Appeals Council declined to review the

ALJ's decision on June 21, 2012 (R. 1-6), making the ALJ's decision a final decision for purposes of judicial review.[1]

### A.      Factual Background

Plaintiff was in a motorcycle accident on August 24, 2008. (R. 291). He was admitted to Saint Francis Medical Center for treatment. (R. 290). X-rays showed Plaintiff had multiple rib fractures, a broken left shoulder blade, and a broken left collar bone. (R. 292, 295, 305-12). He left the hospital on August 29, 2008. (R. 296).

In the month after the accident, Plaintiff saw Julio Santiago, M.D., for treatment. (R. 278-81). A chest x-ray from September 9, 2008 showed multiple fractures of Plaintiff's left ribs, as well compression deformities of his thoracic spine. (R. 287). Plaintiff had some deformity of his left collar bone, which was tender to palpation. (R. 280). Dr. Santiago also noted a decreased range of motion in Plaintiff's left arm. (R. 278). A left shoulder MRI from October 2008 showed moderate osteoarthritic changes in Plaintiff's shoulder, tendinosis, and muscle strain (R. 285). A nerve conduction study on October 14, 2008 showed decreases in nerve conduction in Plaintiff's lower left arm, and also suggested left carpal tunnel syndrome and possible ulnar sensory neuropathy. (R. 288).

Additional treatment notes from Dr. Santiago and MRI scans throughout 2008 and 2009 showed a torn rotator cuff, cartilage tear, and fluid buildup and swelling in the shoulder. (R. 334). A lumbar spine MRI showed a herniated lumbar disc, bulging disc, and generalized lower back arthritis. (R. 284).

---

[1] Prior to his alleged onset date, Plaintiff worked as a truck driver, delivering goods. (R. 210-11).

Plaintiff began seeing Anne McLean, M.D., on November 4, 2009, who became Plaintiff's treating physician. (R. 250-53). Physical examination by Dr. McLean showed that Plaintiff could only lift his arm to 75 degrees, had reduced internal rotation, and had reduced sensation along the outside of his arm from his elbow down to his ring and pinky fingers. (R. 252-53). Plaintiff reported tenderness along his left shoulder blade area, but no tenderness along his spine and shoulder pain upon left lateral rotation. (R. 253).

Mark Fitzgerald, M.D., an orthopedic surgeon, saw Plaintiff on January 19, 2010. (R. 332). Dr. Fitzgerald reviewed x-rays that showed a scapular fracture and non-union of the left collar bone. (*Id*). Dr. Fitzgerald diagnosed Plaintiff with left collar bone nonunion, an old left shoulder blade fracture, and left ulnar nerve paresthesias. (*Id*). Dr. Fitzgerald recommended that Plaintiff have a CT scan to evaluate the union of his shoulder blade and his collar bone nonunion, as well as conduct electrodiagnostic nerve testing of his left arm to evaluate his ulnar nerve issues. (R. 332).

William Bachlund, M.D. (State Agency Physician) reviewed the file on March 5, 2010. (R. 240-47). He completed a residual functional capacity assessment ("RFC"). (*Id*). Dr. Bachlund stated that Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, sit, stand, and/or walk about six hours in an eight-hour day, and was limited in the use of his left arm due to occasional pain. (R. 241). Plaintiff could occasionally stoop and climb ladders/ropes/scaffolds and frequently balance, kneel, crouch, crawl, and climb ramps/stairs. (R. 242). He opined that Plaintiff was limited to occasional overhead reaching, and frequent handling and fingering with his left arm due to pain and limited range of motion. (R. 243).

3

Plaintiff saw Dr. McLean again on June 1, 2010 and September 7, 2010. (R. 330-31). Dr. McLean's notes reiterated Plaintiff's problems with his left shoulder blade, rib, and spine fractures, along with numbness in his left arm. (R. 330). It was noted that Plaintiff was taking Vicodin, and had begun complaining of lower back pain. (R. 341-42). At another visit in February 2011, Plaintiff further reported that he had chest pain, in addition to back pain. (R. 339-40).

On February 25, 2011, Dr. McLean prepared a clinical assessment of pain report. (R. 352). She indicated (1) that Plaintiff's pain would distract him from adequate performance of daily activities, (2) that physical activity such as standing and bending increased his pain to the point that medication or bed rest was necessary, and (3) that his medication would prevent Plaintiff from functioning at a productive level. (R. 352).

Dr. McLean also completed a RFC questionnaire on February 25, 2011. (R. 247-50). She diagnosed Plaintiff with chronic pain, lumbar compression fracture, shoulder blade fracture and several rib fractures, which caused chronic pain in those areas. (R. 347). Dr. McLean further noted that he had reduced sensation on the outside of his left arm, could raise his left arm to 75 degrees, and had pain on left lateral rotation of his spine. (R. 347). Dr. McLean opined that Plaintiff's pain would interfere with his concentration, and that he was incapable of performing low stress jobs, could walk two blocks, and could sit or stand for ten minutes at a time for a total of two hours apiece in an eight-hour workday. (R. 348-49). Dr. McLean wrote that Plaintiff could not lift any weight, and could occasionally hold his head in a static position. He could never twist, stoop, crouch, or climb ladders or stairs. (R. 349-50).

**B.    The ALJ Decision**

On April 6, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 54-63). The ALJ determined at step two that Plaintiff's chronic pain syndrome status, post left clavicle and left scapula fractures, history of thoracic spine vertebral fractures, and lower back pain were severe impairments. (R. 54). At step three, the ALJ concluded that Plaintiff's impairments did not meet the criteria of any of the listed *per se* disabling impairments. (R. 55). The ALJ then found that Plaintiff could perform light work with the following additional limitations: occasional climbing ladders, ropes, and scaffolds; occasional stooping; occasional pushing and pulling and reaching overhead with the left arm; occasional handling and fingering with the left arm; and occasional exposure to vibrations and hazards. (R. 55-61).

Based on the RFC finding, the ALJ determined at step four that Plaintiff could not return to his past relevant work as a truck driver. (R. 61). Based on the vocational expert's testimony, however, the ALJ found at step five that Plaintiff was not disabled because he could perform other work existing in significant numbers in the national economy. (R. 61-62).

---

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)

### C. Evidence Not Before the ALJ

Plaintiff supplied additional evidence after the ALJ issued the decision on April 6, 2011. This included, *inter alia*, statements from Plaintiff's wife (R. 43-48), a friend (R. 32-37), and his brother-in-law (R. 26-31), along with a fifteen-page work performance and occupational feasibility evaluation ("OFE"). (R. 10-25). These documents all post-date the ALJ's decision. (R. 10-37, 43-48). While the Appeals Council considered this evidence, it denied Plaintiff's request for review. (R. 2).

## II. STANDARD OF REVIEW

The Court reviews decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ;s findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence, nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d

476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

### III.  ANALYSIS

On appeal, Plaintiff raises two primary issues for consideration: (1) that the ALJ erred in rejecting the treating physician's opinion outright; and (2) that the ALJ failed to formulate the RFC and explain how material inconsistencies in the evidence were considered and resolved.

Because the Court finds that the ALJ erred in rejection of the treating physician's opinion, the Court finds that such error requires remand.  Since there are also inconsistencies in the ALJ's reasoning with respect to the RFC, the Court similarly grants remand based on this issue.  For the reasons stated below, the ALJ should also review the evidence that post-dates the April 6, 2011 ALJ decision so that the record is fully and fairly developed.  *Baca*, 5 F.3d at 480; *see also Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (recognizing that remand is appropriate where further fact finding is needed).

### A.  Dr. Anne McLean's Opinion Should Not Have Been Rejected for the Reasons Stated by the ALJ

Plaintiff attacks the ALJ's RFC findings by contending that the ALJ gave no weight to the medical opinion of Dr. McLean. (ECF No. 20 at 3.)  Plaintiff contends that the ALJ's decision to reject the treating physician's opinion is without good cause. (*Id*). Plaintiff argues that the ALJ decision lacked both specific and legitimate reasons for

discounting the evidence in its entirety.[3] The Court agrees. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (stating that a treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.)

### 1. Treatment Notes

Contrary to the Commissioner's contention, the Court rejects any notion that Dr. McLean's opinion was internally inconsistent with her treatment notes.[4] The Court finds that there is little (if anything) in Dr. McLean's notes to undercut her conclusions regarding Plaintiff's postural limitations—particularly those limitations with respect to stooping, crouching, climbing, and limitations associated with Plaintiff's left side range of movement. (R. 291). There is ample evidence in Plaintiff's medical history to support these conclusions—including: (a) Dr. McLean's notes regarding Plaintiff's abnormal sensation on "…long left ulnar nerve below elbow…" on Nov 4, 2009 (R. 253); (b) Dr. McLean's finding on December 30, 2009, that Plaintiff is in chronic pain with a history of a scapular fracture with persistent shoulder disability and rib fractures (R. 255); (c) Dr.

---

[3] The ALJ gave "no weight" to Dr. McLean's opinion. (R. 61.) Two reasons were offered by the ALJ. The first being that Dr. McLean's opinion was purportedly inconsistent with her own treatment notes; the second being that the Dr. McLean's opinion was purportedly inconsistent with Plaintiff's testimony. *(Id.)* The Court finds that neither reason provides sufficient cause to have rejected Dr. McLean's opinion.

[4] *Frey*, 816 F.2d at 513; *see also Estate of Stephens v. Colvin* 2013 WL 1729366 (D. Colo. April 22, 2013); *see Nieto v. Heckler,* 750 F.2d 59, 61–62 (10th. Cir.1984). The Court also notes that Plaintiff attended Dr. McLean's clinic on multiple occasions between 2009 through 2011. This extended period allowed Dr. McLean to observe Plaintiff's medical record and evaluate Plaintiff subjective complaints. Any chance that Dr. McLean's conclusions would be inconsistent with her clinical notes would seem slim *Id.* (stating that a "medical opinion . . . based an evaluation of the credibility of the patient's subjective complaints of pain, is medical evidence supporting a claim of disabling pain, even if objective test results do not fully substantiate the claim.")

McLean's notes on June 1, 2010, that Plaintiff saw an orthopedic surgeon and he had numbness and weakness in his (left) arm (R. 330); (d) Dr McLean's February 1, 2011 notes stating Plaintiff's continuing need for surgery on his clavicle and scapula fractures, and continuing weakness and numbness in Plaintiff's left arm.[5] (R. 339)

Other than analysis of Dr. McLean's clinical pain assessment report, dated February 25, 2011, there is no real effort to address the treating physician's other evidence. Instead, the ALJ makes bare-boned statements that Dr. McLean used a check-the-box format, and that her opinion was inconsistent with her own treatment notes.[6] This constitutes nothing more than conclusions in the guise of findings. As such, because the ALJ failed to meaningfully address the evidence (a) through (d), *inter alia*, the Court finds that the ALJ has failed to properly articulate good cause as to why Dr. McLean's evidence should be rejected, which hardly constitutes substantial evidence to support the decision. Such error warrants remand, ever more so where the treating physician's evidence has been rejected *in its entirety*. *Frey,* 816 F.2d at 513; *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (finding that

---

[5] At best (for the Commissioner), the medical history reports might possibly create an ambiguity as to whether Dr. McLean's treatment notes are consistent with her conclusions. But such ambiguity, would then compel the ALJ to seek further evidence to "fully and fairly develop the record", which did not occur. *See Baca*, 5 F.3d 476, 480 (10th Cir.1993). Either way, deficiencies exist.

[6] Dr. William Bachlund (the State Agency Physician) also filled out a similar check-the-box form for the purposes of his RFC. His review was limited to documents in the record up to March 2010. The Tenth Circuit has not questioned the veracity of opinions offered in the context of check-the-box forms. *See, Andersen v. Astrue*, 2009 WL 886237 at *3-6 (10th Cir. Apr. 3, 2009). Oddly, however, there does appear to be more box-checking (and less comments) in Dr. Bachland's RFC assessment compared to Dr. McLean's, despite this very criticism being leveled against the treating physician's assessment by the Commissioner. (ECF No. 16 at 7.)

conclusory analysis does not constitute substantial evidence in support of the disability determination); *Estate of Stephens v. Colvin,* 2013 WL 1729366 (D. Colo. April 22, 2013) (same).

        2.     <u>Plaintiff's Testimony</u>

The ALJ also rejected Dr. McLean's opinion because it was inconsistent with Plaintiff's testimony. (R. 61.) But on closer inspection of the ALJ's decision, such reasoning is problematic since Plaintiff's testimony was not afforded *any* weight in the ALJ decision. By definition, if the testimony is not afforded any weight, as here, this makes it near impossible for Plaintiff's testimony to be inconsistent with Dr. McLean's opinion; let alone any other evidence in the record. To illustrate, at the top of R. 61, the ALJ states in boilerplate fashion that Dr. McLean's opinion is inconsistent with Plaintiff's testimony. The ALJ concludes in the next sentence: "No weight is given to [Dr. McLean's] opinion." (*Id*). Two paragraphs later, however, the ALJ then states that the Plaintiff's "allegations of disabling pain are not credible." (*Id.*) This presents the problem: if Plaintiff's allegations are *not* credible, how can Plaintiff's testimony be inconsistent with Dr. McLean's opinion as the ALJ purportedly reasoned at the top of R. 61?

In sum, because Plaintiff's testimony has no weight, there is nothing for Dr. McLean's opinion to be inconsistent with. It follows, therefore, that the ALJ's reasoning can hardly conform with the specificity requirements demanded by the Tenth Circuit. The Court finds good cause is absent here, warranting reversal and remand for further consideration. *Frey*, 816 F.2d at 513; *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (stating that "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent

reviewers."); *Estate of Stephens v. Colvin* 2013 WL 1729366 (D. Colo. April 22, 2013).

### 3. Boilerplate Reasoning

Finally, and as alluded to above, the Court finds that the ALJ's reasoning at R. 61 represents a common problem in ALJ decisions—*i.e.*, the use of the boilerplate statements. The use of such statements have been shunned by the Tenth Circuit to ensure that the ALJ's decision is fully developed and can be reviewed on appeal. *See Hardman*, 362 F.3d at 679 (stating that "the use of [s]tandard boilerplate language will not suffice [because it] fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.")

Here, the ALJ's conclusion regarding Dr. McLean's evidence represents a boilerplate statement. The reason is two-fold: (1) the conclusion fails to link the statement to any evidence in the record; and (2) the conclusion is predicated on the ALJ's own internal inconsistency with respect to the credibility findings of Dr. McLean and Plaintiff. These deficiencies provide further basis for why remand is necessary in this case. *Id.* at 679; *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### B. The ALJ Failed to Formulate the RFC and Explain How Material Inconsistencies in the Evidence were Considered and Resolved

Plaintiff also challenges the ALJ's decision on the grounds that the RFC has not been properly formulated. (ECF No. 13 at 11-12.) The Court agrees. Much of the reasoning derives from that above. It need not all be repeated, but to make clear, the RFC assessment is made by the ALJ "based on *all* the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of

the most a claimant can do despite his or her limitations.  *Id.*  Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996).  An ALJ must make specific RFC findings based on all of the relevant evidence in the record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (stating that "the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were resolved.").

Here, the treating physician has provided postural limitations for Plaintiff.  (R. 247-50, 348-49). For example, he can never twist, stoop or crouch; he can only use his left arm 10% of the time. (R. 350). These limitations are at odds with the State Agency Examiner, Dr. Bachland.  (R. 240-47).  Notwithstanding this, and by default, the ALJ effectively adopted Dr. Bachland's RFC without any serious consideration of how the evidence conflicts with Dr. McLean because she *improperly* rejected Dr. McLean's opinion from the outset.  This deficiency was addressed earlier.  Had Dr. McLean's evidence been *properly* discounted, there could well be nothing wrong with the ALJ's approach.  But this is not the case: there are *significant* deficiencies in the ALJ's rejection of the treating physician's evidence.  The Court finds that these deficiencies, in turn, *spill over* into the RFC analysis since the Court does not know what parts of Dr. McLean's evidence are credible and what parts are not.  Without Dr. McLean's evidence being properly discounted, the Court also does not know what parts of Dr. McLean's evidence could have been used to formulate limitations in the RFC.  Without proper formulation of the RFC, the substantiality test cannot be met. *Winfrey*, 92 F.3d at 1023.

The Court further notes that the deficiencies above are compounded by the fact that there are facial differences between Dr. McLean's and Dr. Bachland's findings.  The

Court does not reconcile these differences at this stage. The better approach is to leave this task to the ALJ; a task that is clearly within the ALJ's province to determine on remand.[7]  See Social Security Ruling 96-8p (stating that if the ALJ's RFC finding "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

### C. The ALJ's Hypothetical Questions to the Vocational Expert Did Not Precisely Reflect Plaintiff's Limitations

Next, Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Plaintiff's limitations. (ECF No. 19 at 11.) Such error, Plaintiff says, derives from problems associated with the RFC determination. The Court agrees.

The *Winfrey* case, like the instant one, illustrates the problems associated with an incomplete RFC assessment. Specifically, when limitations are omitted from the RFC finding are also omitted from the hypothetical questions proposed to the vocational

---

[7] The Court also notes several further problems with the ALJ's decision. For brevity, they are only summarized to provide some level of guidance on remand.

(1) The ALJ never explained how objective testing contradicted with the treating physician's testimony. Indeed, the ALJ never got to that analysis because the decision (wrongly) rejected the treating physician's opinion outright. Upon remand, and should the ALJ afford any weight to Dr. McLean, the ALJ will be required to properly explain any contradictions in the evidence, so to enable the parties and appellate courts to discern the internal reasoning employed by the ALJ for the purposes of review.

(2) The ALJ did not fully and fairly develop the record because it is internally inconsistent. This illustrated by the fact that at R. 61, the ALJ stated that Plaintiff does "not have any medical findings that support the asserted inability to ...stoop." But at R. 55, the ALJ, when summarizing the RFC determination, expressly states that a postural limitation is "occasional stooping." The ALJ does not explain this inconsistency within the ALJ's own findings. This demonstrates that the record has not been fully and fairly developed for this Court to properly review.

expert, this results in a defective determination as to a claimant's abilities to do work in the existing economy. Such defects taint the substantiality of the vocational expert's evidence. *Winfrey* 92 F.3d at 1024; *see also Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.").

Here, the ALJ's decision lacks precision because she did not properly discount Dr. McLean's evidence above. Limitations in Dr. McLean's evidence have thus been improperly discounted from the record and form no part of the RFC analysis. The errors, therefore, that infect the RFC, similarly infect the questions proposed to the vocational expert. And, because the ALJ did not provide the vocational expert with the correct questions, this misled, or, at best (again, for the Commissioner), would have confused the vocational expert into believing that Plaintiff could undertake tasks that he may be prevented from doing.

The Court concludes that because the ALJ's error is material and not precise, it is sufficient to taint the substantiality of the vocational expert's testimony. *See Hargis*, 945 F.2d at 1492. Remand is thus also required to resolve this deficiency. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

### D.    Harmless Error

Finally, it is worth addressing the fact that Commissioner's seems to argue that harmless error doctrine applies in this case. It seems to be a catch-all argument.[8] (ECF

---

[8] The argument is only tangentially made at the outset of the Response brief, but because it is made, it warrants brief review. (ECF No. 15 at 20-21; ECF No. 16 at 16.)

No. 16 at 4.)  The Court, however, disagrees with its application—ever more so in light of the deficiencies that have been addressed above.

Courts apply harmless error cautiously in the administrative review setting. *Fischer-Ross*, 431 F.3d at 733.  An error is only harmless when the Court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The Court has no confidence that the factual deficiencies in this case could not be resolved any other way, because the deficiencies are critical omissions.  These errors are anything but harmless.  Indeed, the Court finds that the errors are more toward the significant end of the spectrum, which accordingly does nothing to save the ALJ's decision from remand.

### E.    Remaining Arguments

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings.  But because the Court finds that the ALJ's RFC was not supported by substantial evidence, *inter alia*, above, it need not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (stating that when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).  The Court expresses no opinion as to those arguments it has not directly addressed.  Neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  Indeed, if the deficiencies above are corrected, the ALJ could possibly arrive at the same conclusion.  This will, however, require renewed consideration of the record as a whole—including Dr. McLean's lengthy

medical history with Plaintiff, along with the new evidence that has been filed since the ALJ's decision was issued.

As such, the Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 19th day of September, 2013.

BY THE COURT:

William J. Martínez
United States District Judge